Robert F. Comp, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs April 30, 1984 to Judges WILLIAMS, JR., DOYLE and BLATT, sitting as a panel of three.

*Michael Goldberg,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 11, 1984:

Robert F. Comp, Jr., (claimant) appeals from the decision and order of the Unemployment Compensation Board of Review (Board) denying his claim for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We reverse.

Claimant was employed as an automatic machine screw operator by the National Bearings Company (employer) from January 1974 until his termination on April 14, 1982. On April 14, 1982 claimant was discharged for breaking the tool of another employee which claimant was using without the owner's permission and for claimant's failure to report the incident to his supervisor.

Claimant was found eligible for benefits by the Office of Employment Security (OES) and the employer appealed. After a hearing, the referee reversed the OES determination and found claimant's conduct rose to the level of willful misconduct rendering him ineligible for benefits. Claimant appealed the referee's decision to the Board which affirmed the referee and petition for review to this Court followed.

Before this Court, claimant argues the referee's findings are not supported by substantial evidence

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

and that the Board committed errors of law.[2] While "willful misconduct" is not defined by Section 402(e) of the Law, we have held it to be conduct which is a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has the right to expect of an employee, or culpable negligence showing an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). Where an employee has been discharged, the burden is upon the employer to establish the willful misconduct of the employee so as to render the employee ineligible for benefits. *Coulter v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 462, 332 A.2d 876 (1975).

We look first to claimant's contention that the referee erred in considering claimant's attendance history where the employer did not initially cite absenteeism as a cause for discharge. In *Lecker v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 266, 455 A.2d 234 (1983), we held that a referee on appeal must consider only those charges of willful misconduct as delineated in the OES determination notice. To allow a critique of other conduct against which charge the employee is unprepared to defend or explain is fundamentally unfair and, absent

---

[2] Our scope of review in unemployment cases is limited to determining whether an error of law was committed or whether the Board's findings of fact are supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Saxton v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 636, 455 A.2d 765 (1983).

mutual consent of its consideration, is prohibited. *See* 34 Pa. Code §101.87; *Hanover Concrete Co. v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 463, 402 A.2d 720 (1979).

Claimant also calls attention to our decision in *Philadelphia County Board of Assistance v. Unemployment Compensation Board of Review*, 64 Pa. Commonwealth Ct. 451, 440 A.2d 693 (1982). In that case the employer discharged the employee for an unauthorized absence from work from October 30 through November 14, 1979.[3] At the referee's hearing, the employer testified as to the employee's prior history of unauthorized absences and stated this prior history was a reason for discharge. We held that where the employer states that claimant's discharge was for a *specific* unauthorized absence, the claimant's prior absentee history was irrelevant. *Id.* at 454-55, 440 A.2d at 695. The circumstances of the instant case are similar to those in *Philadelphia County*. Here, the employer stated to the OES that claimant was discharged for the broken tool incident. The employer specifically told the OES that claimant was not discharged for the absence of April 5, 1982.[4] At the hearing, however, the employer's witness did testify as to the absence of April 5, 1982 and claimant's refusal to work Good Friday to make up the missed day. In addition, five of the ten Findings of Fact made by the referee dealt with the April 5, 1982 absence. In that employer stated both to claimant and to the OES that claimant's April 5, 1982 absence was not one of the reasons for

---

[3] The reason for discharge was documented in a letter sent by the employer to the claimant which was offered into evidence by the employer. 64 Pa. Commonwealth Ct. at 454, 440 A.2d at 695.

[4] The information the employer supplied to the OES by a telephone interview documented on a Form UC-990, Summary of Interview, dated May 11, 1982, mentioned the verbal warnings and the absences which took place in 1981.

discharge, we agree with claimant that the testimony of the employer's witness and the referee's findings relating to that absence were irrelevant to this case. As such, those findings[5] cannot be used to support the Board's conclusion that claimant's conduct amounted to willful misconduct.

Claimant also attacks the relevancy of the referee's finding of fact relating to his prior history of absenteeism.[6] Claimant contends that the absenteeism, the last instance of which was a year prior to his discharge not counting the April 5, 1982 absence, is too remote to be a basis for a denial of benefits. In *Tundel v. Unemployment Compensation Board of Review*, 44 Pa. Commonwealth Ct. 312, 404 A.2d 434 (1979), we held that an incident which took place twenty-five days prior to claimant's discharge with no explanation by the employer for the delay was too remote to constitute the basis for a denial of benefits. *Id.* at 316-17, 404 A.2d at 436. Accordingly, we find a

---

[5] Findings of Fact 3-7 read as follows:

3. On April 5, 1982 the claimant did not report to work and did not contact the employer to report off.

4. The claimant reported to work on April 6, 1982 and told the supervisor that he couldn't get to a phone on April 5 because his leg or knee had swollen and claimant asked if he could use a vacation day for April 5, 1982.

5. Claimant's supervisor informed him he would need to speak with his superior in regard to the vacation day.

6. The supervisor returned to the claimant later and notified him that he could not use a vacation day for April 5 but the superior indicated he could come in on Friday, April 9, 1982, to make up the time he had lost on Monday.

7. The claimant refused to make up the time on Friday.

[6] Findings of Fact 2, reads as follows:

2. Claimant had developed a history of excessive absenteeism during the course of his employment and had received a number of warnings and a two-day suspension in April, 1981.

two-day suspension for unauthorized absences from work which was imposed a year prior to claimant's ultimate dismissal too remote to support the denial of benefits.[7]

---

[7] The evidence supporting the referee's finding that claimant had a history of excessive absenteeism and had received a number of warnings prior to April 1981 is scant and insubstantial consisting solely of the vague testimony of the employer's witness:

QR: Alright, now you say there were other things?

AEW: Yes, he was warned about absenteeism.

QR: When did this absenteeism begin? Is it the entire time he worked there or just—

AEW: Yes.

QR: The entire time from '74?

AEW: Um-hum.

QR: Well, was anything ever done about it?

AEW: Well, Bob was given two days off without pay.

QR: Well, when were the warnings and the two days off given?

AEW: The two days off were given, I'll look here, in April of '81.

QR: Were there any problems with absenteeism after April of '81?

AC: One day.

QR: Now wait. Let's have just one person at a time. We'll get to you in a minute.

AEW: Well—

QR: Now wait a minute. This is an employee attendance record card for Robert Comp but what year is this?

AEW: It's up in the corner, Ma'am. 1981.

QR: Oh, here, '81. Ok and these markings in the different dates show, uh, what the problems were.

AEW: There's a key at the bottom.

QR: At the bottom, from the key, ok. Now there was a voluntary layoff 8/17/81 to 1/4/82?

AEW: Yes, Ma'am.

QR: And then he returned on 1/4/82?

AEW: Yes, Ma'am.

We now reach claimant's final contention that the Board's conclusion that his conduct amounted to willful misconduct is erroneous as a matter of law. Whether or not claimant's actions constitute willful misconduct is a question of law reviewable by this Court. *Nyzio v. Lee Tire and Rubber Co.*, 26 Pa. Commonwealth Ct. 600, 364 A.2d 981 (1976). In view of the foregoing, the only conduct of claimant which remains in the record is claimant's breaking of the tool belonging to another employee. Claimant admits using the tool without his co-worker's permission and that he did not report the incident until confronted by his supervisor the next day. The Board argues that the broken tool was the last incident of a long unsatisfactory record and that the broken tool incident, when viewed with claimant's overall record, amounts to willful misconduct. We disagree. With the record deleted of the claimant's unauthorized absences which we held could not properly be considered, the only complaint articulated by the employer's witness was the broken tool incident. The employer's witness stated that there were no company rules or regulations dealing with employees borrowing tools from each other. Therefore, claimant cannot be charged

---

QR: Well, were there any problems after that?

AEW: Not up until the, uh, there was an unexcused absence in April.

The evidence clearly does not satisfy the elements showing willful misconduct by reason of absence which are: (1) excessive absences, (2) failure to notify the employer in advance of the absence, (3) lack of good or adequate cause for the absence, (4) disobedience of existing company rules, regulations or policy with regard to absenteeism, and (5) disregard of warnings regarding absenteeism. *Compare Fitzgerald v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 629, 631, 411 A.2d 899, 900 (1980) (claimant absent from work 106 days in 1977 and 24 of 64 work days in 1978 prior to her discharge and given repeated, documented warnings).

with a deliberate or wanton violation of the employer's rules so as to constitute willful misconduct. The record is also seriously deficient in what way claimant's conduct has been detrimental to the employer's interest. While the borrowing and breaking of a tool of another without permission is not to be condoned, especially where claimant conceals the fact from the other employee and his supervisor, it is not such a breach of the standards of behavior expected of an employee by an employer so as to rise to the level of willful misconduct. Claimant was about the employer's business when he broke the borrowed tool, not on a frolic of his own. As the employer and the Board have articulated no adverse effects upon the employer resulting from claimant's unauthorized use and abuse of a co-worker's tool, the denial of benefits due to claimant's misconduct cannot be upheld as it is not supported by the record or the relevant facts as found by the referee.

Order reversed.

ORDER

AND Now, the 11th day of July, 1984, the order of the Unemployment Compensation Board of Review at No. B-209982, dated September 17, 1982, denying unemployment compensation benefits to Robert F. Comp, Jr., is reversed.